UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL A. DEFRANCO and MICHELLE ENGLER,

                        Plaintiffs,

    v.

THE TOWN OF IRONDEQUOIT, et al.

                      Defendants.
_____

**PLAINTIFFS' OBJECTIONS
TO THE MAGISTRATE
COURT'S DECISION & ORDER**
Civ. No.:06-CV-6442 L(P)

Plaintiffs Michael A. DeFranco and Michelle Engler, by and through their attorney,

Jeffrey Wicks, Esq., do hereby make and file their objections to the Decision & Order of

United States Magistrate Judge Marian W. Payson filed on September 11, 2009.

## PROCEDURAL HISTORY

Plaintiffs Michael DeFranco and Michelle Engler brought the above-entitled action

against the Town of Irondequoit, the City of Rochester, the Town of Brighton, the Town of

Greece, their respective police departments, and eight individual police officers associated

with aforementioned police departments.  Plaintiffs lawsuit alleges various claims against

the above-mentioned defendants arising from the execution of a search warrant on June

1, 2005 at Plaintiffs' home by members of the Greater Rochester Area Narcotics

Enforcement Team ("GRANET").  See 06-CV-6442, Docket Number ("Docket No.") 1.

Plaintiffs' allege that in the course of executing the constitutionally infirm warrant,

Defendants used a battering ram to enter the home, violently assaulted the Plaintiffs,

riddled the home with bullets, and shot and killed one of their dogs.  Id.  Plaintiffs have

asserted claims under 42 U.S.C. Section 1983, alleging that Defendants have violated

their Fourth, Fifth and Fourteenth Amendment rights, as well as various state law claims, including assault, battery, trespass to chattels, and intentional and negligent infliction of emotional distress. Id.

Plaintiffs sought discovery materials related to the confidential informant whose statements supported the above-mentioned warrant. Defendants refused to supply those materials. Plaintiffs subsequently filed a Motion to Compel the production of information and documents from the Town of Irondequoit related to the search warrant, specifically, disclosure of the identity of the confidential informant and production of the unredacted application, the informant's deposition that was allegedly attached to the warrant application and any records reflecting the informant's activities for two years prior to the warrant's execution. Docket No. 25. The defendants from the Town of Irondequoit, the City of Rochester, and the Town of Greece cross-moved for a protective order prohibiting the requested disclosure. Docket Nos. 31-33. The Town of Brighton defendants opposed the disclosure of the informant's identity, but did not oppose production of the informant's deposition and warrant application, provided that the informant's identity was suppressed. Docket No. 29.

In a Decision & Order dated September 11, 2009, the Magistrate determined that collateral estoppel applied to prevent Plaintiffs from re-litigating the issue of probable cause as related to the challenged warrant. Docket No. 40 at pp. 7-9. Based solely on the foregoing determination, the court held that "disclosure is neither 'relevant [nor] essential to the presentation of [plaintiffs'] case on the merits.'" (citation omitted) Docket No. 40 at p. 9.

For the reasons hereinafter set forth, Plaintiffs ask the District Court to find that collateral estoppel does not apply in this case. In addition, Plaintiffs ask the District Court

to find that disclosure of the informant's identity and disclosure of the documents related to the disputed search warrant are relevant and essential to the presentation of the Plaintiffs' case on the merits. Plaintiffs respectfully request that this Court vacate the order of the Magistrate and grant Plaintiffs' Motion to Compel.

## STANDARD OF REVIEW

Rule 72 (a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, a party may subsequently serve and file objections to the magistrate's order within ten (10) days after being served with a copy. The district judge in the case must consider timely objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. See also Local Rule 72.3 (a)(2).

## SUMMARY OF MAGISTRATE'S DECISION

The Magistrate determined that Plaintiffs' disclosure requests were barred by the doctrine of collateral estoppel. The Magistrate determined that the state court had determined that probable cause supported the search warrant and that Plaintiffs had fully litigated the issue of probable cause. Docket No. 40 at p. 7. Although the Magistrate correctly set forth the relevant standards regarding disclosure of confidential informant information as well as the legal analysis required for determining the application of collateral estoppel (Docket No. 40 at pp. 4-7), she failed to conduct a full analysis of the principles of collateral estoppel, summarily determining that "the state court has already determined that the search warrant was supported by probable cause, and plaintiffs have fully litigated that determination in the state courts" without carefully going through the two-

3

part collateral estoppel analysis.  Docket No. 40 at p.7.

Plaintiffs now object to the determination of the Magistrate contained in the
Magistrate's Decision & Order, dated September 11, 2009.

## ISSUES PRESENTED

Whether collateral estoppel applies to bar the disclosure of the informant's identity
and documents related to the search warrant where the Plaintiffs did not have a "full and
fair opportunity" to contest the decision now said to be controlling and where the requested
disclosures are relevant and essential to the presentation of Plaintiffs' case on the merits.

## SUMMARY OF ARGUMENT

The Magistrate erroneously determined that the doctrine of collateral estoppel
applied to preclude the requested disclosures in the case at bar.  Specifically, the
Magistrate failed to fully and correctly analyze the two-part standard which must be
satisfied in order for collateral estoppel to apply.

The Magistrate determined that the search warrant challenged by Plaintiffs in the
instant case was supported by probable cause and that the Plaintiffs fully litigated that
determination in the state courts.  The Magistrate fails to provide any meaningful analysis
to support its conclusory determination that the Plaintiffs had a full and fair opportunity to
litigate the issue in the first proceeding and, in fact, wholly fails to address the arguments
set forth in Plaintiffs' papers supporting the contention that Plaintiffs could not "fully and
fairly" challenge the probable cause issue.  New York law requires that issue preclusion
only applies if (1) the issue in question was actually and necessarily decided in a prior
proceeding, and (2) the party against whom the doctrine is asserted had a full and fair

opportunity to litigate the issue in the first proceeding.

Although the Magistrate correctly decided that the issue of probable cause for the search warrant was determined by the state court, she erroneously determined that the Plaintiffs had a "full and fair opportunity" to litigate the issue in the first proceeding. **The Magistrate wholly ignored or failed to consider that Plaintiffs were never afforded an opportunity to attack the search warrant in a meaningful way because of the unique circumstances of the case.** The Magistrate wholly ignored or failed to address that the challenged warrant was originally issued solely upon information provided by a confidential informant ("CI"). The Magistrate further ignored and/or failed to address the very unusual circumstances of the prior proceeding as set forth in Plaintiff's papers, to wit: the CI appeared before the judge issuing the warrant and signed a supporting deposition. As a result of these unusual facts, the Plaintiffs were left with no viable legal vehicle to attack or challenge the finding of probable cause to support the warrant.

Plaintiffs had no opportunity to challenge the informant's information to determine if it was reliable, stale, coerced, or patently false in the underlying state proceeding, due to the unique circumstances of the informant appearing before the judge. As a direct result, Plaintiffs were left with no viable method or opportunity to attack the finding of probable cause because they could neither question the CI, nor attack the heavily redacted documents which allegedly supported the warrant. In sum, **because of the fact that the CI had appeared before the issuing judge, *Plaintiffs were denied a "full and fair opportunity" to challenge the finding of probable cause*.** The opportunity to explore and ascertain answers related to the aforementioned inquiries regarding the veracity, staleness, or reliability of the CI's information is both relevant and essential to determining

whether probable cause did exist to execute the search warrant, and axiomatically to the presentation of Plaintiffs' civil case on the merits.

## ARGUMENT

I. **PLAINTIFFS WERE NOT AFFORDED A FULL AND FAIR OPPORTUNITY TO LITIGATE THE DETERMINATION OF PROBABLE CAUSE IN THE STATE PROCEEDING.**

### A. Introduction.

Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, **and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding**.  See *Montana v. United States*, 440 U.S. 147, 153 (1979); *Hill v. Coca Cola Bottling Co.*, 786 F.2d 550, 552-53 (2d Cir.1986); *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (emphasis added).  Issue preclusion will apply ***only*** if it is quite clear that these requirements have been satisfied, lest a party be "precluded from obtaining at least one full hearing on his or her claim." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485 (1979).  The party against whom collateral estoppel is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding.  *Kaufman*, 65 N.Y.2d at 456.

### B. Plaintiffs were denied any legal recourse to challenge the search warrant in the state proceeding because of the unique circumstances of the case.

In the underlying state proceeding, the police supported their search warrant application with information from a single individual:  the confidential informant.  Information from the CI provided the sole basis for probable cause.  The police failed not only to corroborate the information provided by the CI, but also failed to establish the

6

reliability of the informant or the information.  Docket No. 25, Exhibit ("Ex.") G at pp. 14, 19.

However, in attempting to challenge the legality of the warrant, Plaintiffs were foreclosed

from challenging the reliability of the informant, the reliability of the information, or the

Defendants' use of CI's information in seeking the infirm search warrant.

> 1. Plaintiffs could not invoke the *Aguilar-Spinelli* test to challenge probable cause for the search warrant as it was inapplicable based on the unique circumstances of the CI appearing personally before the magistrate.

In the underlying criminal case, Plaintiffs' counsel attempted to challenge the

reliability of the CI and his information through the *Aguilar-Spinelli* line of case law.

Plaintiffs' counsel was successful in eliciting from Officer Anthony DiFante ("DiFante") that

the CI's reliability was not proven based on past information and that DiFante had done

nothing to verify the reliability of the information provided by the CI.  Ex. "G", pp. 14,19.  As

a result, under the *Aguilar-Spinelli* analysis, the People had failed to meet their burden and

the warrant lacked probable cause. The state court's decision in the underlying criminal

matter turned not on the issue of reliability, but on a separate issue—that issue being that

the CI appeared directly before the judge and so *Aguilar-Spinelli* did not apply.  See

*People v. Taylor*, 73 N.Y.2d 683, 688 (1989).  Judge Joseph T. Genier ruled that the

search warrant should stand, albeit reluctantly:

> "We get back to the age-old question I've already talked about, okay, before you, Mr. Wicks, and before the last district attorney.  I'm the judge caught in the middle here.  It's a signed search warrant, but it wasn't issued by me, okay.  And I don't think it's within my perspective to—well, I can't really know what was stated in the meeting, who was around regarding this.  And I don't think I can question Judge Dinolfo on that point.  So my feeling is, with his signing of the warrant, with the information he obtained regarding it, whether it was written or whether there was something said there, I'm going to allow the search warrant to stay, and I'm going to grant that there was probable cause established.

7

> **But suffice to place on the record it's rather difficult without
> personally signing the warrant itself regarding the matter – and I
> hate to refer to myself as a Monday morning quarterback, but it
> looks like I'm the Friday morning quarterback, when all this is said
> and done.  So the question regarding the search warrant, I'm going
> to find that there was probable cause, although your arguments
> make sense, Mr. Wicks.**"

Docket No. 25, Ex. "G" at pp. 28-29 (emphasis added).  Thus, it is abundantly clear that

the state criminal court had reservations about its own decision and only reluctantly made

a determination of probable cause.

Judge Genier's decision was timely appealed to the Monroe County Court.  In his

Decision and Order on appeal, Judge John R. Schwartz upheld Judge Genier's decision

only because of the unique circumstance of the informant's personal appearance before

Irondequoit Town Justice Vincent DiNolfo and the fact that he actually signed a sworn

supporting deposition.  Docket No. 25, Ex. "H" at p. 4.  To date, however, no copy of that

supporting deposition – either in the present case or in the underlying criminal case - has

been provided.  Thus, the defense in the criminal case was in the position of arguing

against a document with which it never had seen; similarly, in the case at bar, Plaintiffs

remain unaware of the contents of a document on which two courts have allegedly relied

on, at least in part, as the basis for their decisions.  Had *Aguilar-Spinelli* applied to the

underlying criminal case, the warrant would have been thrown out as defective because

the People failed to establish either prong of the informant reliability requirements.

> 2. <u>Despite the Defendants' contentions, Plaintiffs could not seek a
>    *Darden* hearing to challenge probable cause for the search
>    warrant because of the unique circumstances of the CI appearing
>    personally before the magistrate.</u>

The New York State Court of Appeals issued guidelines in *People v. Darden*, 34

N.Y.2d 177 (1974) for determining probable cause when a search was based solely on

8

information supplied by an informant.  Striking a balance between the defendant's rights and the competing informer's privilege, the *Darden* court ordered an *ex parte*, in camera hearing that would preserve the anonymity of the informer while providing an opportunity for the hearing court to make findings of fact on the contested issues.  See *People v. Darden*, 34 N.Y.2d 177, 181 (1974).  Since the hearing had to take place in the absence of the defendant and his counsel, the guidelines sought to better equip the hearing court to conduct a meaningful examination of the informant.  Id.  This was to be accomplished by permitting the defendant and his counsel to submit proposed questions to the court.  Id.; see also *People v. Carpenito*, 171 A.D.2d 45 (2d Dep't 1991) (discussing the applicability of the *Darden* hearing).

Typically, a *Darden* hearing is used when there is a legitimate concern that an informant is a police fabrication whose existence was falsified and whose made-up information was put into a search warrant application by a police officer.  A *Darden* hearing requires the reviewing court to examine the informant in camera to determine that he did, in fact, exist and did provide the information attributed to him.  *People v. Goggins*, 34 N.Y.2d 163 (1974); see also *People v. Maxwell*, 159 Misc. 2d 28.  **However, a *Darden* hearing is <u>not</u> utilized when an informant has appeared before the magistrate.**  *People v. Salgado*, 57 N.Y.2d 662 (1982); *People v. Carpenito*, 171 A.D.2d 45 (2d Dep't 1991), order aff'd, 80 N.Y.2d 65 (1992); *People v. Maxwell*, 159 Misc. 2d 28 (Catt. County Ct. 1993).  The rationale underlying this rule is that the informant's appearance establishes that he exists and gives the magistrate the opportunity to test his reliability.  Therefore, Plaintiffs were not allowed to pose questions to the informant.  So, again, Plaintiffs were foreclosed from challenging probable cause because of the unique circumstances

9

involving the CI appearing personally before Judge Dinolfo.

Had a *Darden* hearing been available, Plaintiffs could have posed questions to the CI through Judge Genier to test the CI's reliability and the reliability of the information. Judge Genier would have similarly had an opportunity to examine the CI on his own to determine whether probable cause existed. Instead, Judge Genier reluctantly relied on Judge Dinolfo's warrant, with no additional inquiry. Because of the unique circumstances of the CI appearing personally before Judge Dinolfo, Plaintiffs were effectively deprived of an opportunity to challenge the issue of probable cause.

3. Plaintiffs had no other vehicles to attack the presumption of probable cause and the court undertook no analysis of the issuing judge's determination.

New York State law requires that a suppression court review search warrants and determine whether the issuing judge could have concluded that probable cause existed. *People v. Castillo*, 80 N.Y.2d 578 (1992). Case law dictates that where it appears that the magistrate has conducted such a measured and comprehensive examination into the basis for the warrant, the factual determination as to probable cause will constitute a suitable makeweight when the warrant is challenged. See *People v. Williams*, 20 N.Y.2d 388 (1967). By the same token, "where the magistrate merely acts as a rubber stamp the validity of the warrant will be suspect." See *People v. Hanlon*, 36 N.Y.2d 549, 559 (1975).

In the underlying state proceedings, Judge Genier undertook no analysis of the issuing judge's determination of probable cause justifying the search warrant. Docket No. 25, Ex. "G". As set forth at length above, Judge Genier, albeit reluctantly, simply paid deference to Judge Dinolfo's discretion without any further inquiry. Judge Genier did not review a transcript of the informant's testimony to Judge Dinolfo, a video tape of that

10

meeting, or any notes regarding that meeting.  In fact, upon information and belief, none of those materials ever existed.  Similarly on appeal, Judge Schwartz did not address or discuss any inquiry into the issuance of the warrant and the probable cause determination. Docket No. 25, Ex. "H".  Judge Schwartz's decision relied solely on the fact that *Aguilar-Spinelli* did not apply in cases where the informant appeared personally before the magistrate.  Id.   Based on all of the foregoing, Plaintiffs lacked a full and fair opportunity to challenge the Defendant's unlawful and unsupported search warrant.

## II.   THE REQUESTED DISCLOSURES ARE RELEVANT AND ESSENTIAL TO THE PRESENTATION OF PLAINTIFFS' CASE ON THE MERITS

### A. Introduction.

The informer's privilege allows the government to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." See *Roviaro v. United States,* 353 U.S. 53, 59 (1957).  The **government** has a legitimate public policy interest in preventing the disclosure of the names of confidential informants.  Id. at 64 (emphasis added).  The privilege applies to the informant's **identity only** and ***not*** the substance of the informant's communications. "Where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Roviaro*, 353 U.S. at 60.

The informer's privilege applies in both civil and criminal actions.  See *In re United States,* 565 F.2d 19, 22 (2d Cir.1977).  However, the privilege is not absolute.  See *Roviaro*, 353 U.S. at 60; *In re United States*, 565 F.2d at 22.  The party seeking disclosure of the informant's identity and/or communications bears the burden of establishing the need for such disclosure.  *In re United States,* 565 F.2d at 23.   "Whether the showing of

11

need rises to that requisite level is a discretionary determination [that] necessarily must be made on a case-by-case basis." *Herman v. Crescent Publ'g Group, Inc.* No. 00 Civ. 1665(SAS)(FM), 2000 WL 1371311, at *2 (S.D.N.Y. 2000) (citing *Roviaro*, 352 U.S. at 61).

As aforementioned, the informer's privilege allows the **government** to withhold disclosure of the ***identity*** of a confidential informant, not the communications or written statements of an informer. See *Roviaro*, 353 U.S. at 60. In the case at bar, Defendants—defendants in a civil lawsuit—seek to withhold both the identity of the CI and also the underlying affidavits supporting the warrant application and background information concerning the CI. As clearly settled in *Roviaro*, such information must be disclosed as it is not protected by the privilege.

### B. The Informant's communications and identity are crucial to Plaintiffs' case.

Where "the identification of an informer or the production of his communications is **essential to a fair determination of the issues in the case, the privilege cannot be invoked**." *In re United States,* 565 F.2d at 22-23 (citing *Roviaro,* 353 U.S. at 60-61) (emphasis added). The information provided by the CI is central to the Plaintiffs' claims of an unreasonable search and seizure, false arrest, and violation of civil rights under Section 1983. Upon information and belief, the CI provided information to law enforcement that was later used in an affidavit to obtain a search warrant from a judge. Docket No. 25 at pp. 3-5. Disclosure is most appropriate when the informant is "a key witness or participant" or when the informant is integral in the case. *United States v. Saa,* 859 F.2d 1067, 1073 (2d Cir.1988). It is hard to imagine a more appropriate situation for disclosure than the case at bar. The CI provided the sole information used to justify a brash and deadly raid on Plaintiffs' home. It is difficult to identity anyone more integral to the events

12

which precipitated the violent raid than the CI.  It is uncontroverted that the CI's statements were the only information used to support the warrant.  Accordingly, the information the CI could provide is central to the disposition of this case.

Plaintiffs have been provided with a copy of the warrant dated June 1, 2005 authorizing the search on June 1, 2005, a redacted copy of Officer DiFante's Affidavit/Application for the warrant, but not the underlying affidavit of the informant used to obtain the warrant. See Docket No. 25, Ex. "C".  The police failed not only to corroborate the information provided by the CI, but also failed to establish the reliability of the informant or the information.  Docket No. 25, Ex. "G" at pp. 14, 19.  It is the Plaintiffs' contention that the police unreasonably relied on the information supplied by the confidential informant and so the CI's statements are critical to determining the claims of this suit.  It is therefore imperative that the Plaintiffs receive these un-redacted materials so they may build a challenge to the validity of the search warrant.

While it is not enough that the identification of an informant might be of "some assistance", the disclosure sought herein is of paramount importance.  See *In re United States,* 565 F.2d at 23.  Here, the identification and information gleaned from the disclosure goes to the very heart of the Plaintiffs' claims of an illegal search and an illegal arrest.  Specifically ascertaining what the CI told police and what information they relied on is certainly not a "fishing expedition" or a means of "gratify[ing] the moving party's curiosity or vengeance."  Id.; and see *Carbajal v. Village of Hempstead,* 2003 WL 23138447, at *2 (E.D.N.Y. 2003).

It is not only imperative that this Court compel disclosure of the affidavits and statements of the informant from the Defendants, but it is of paramount importance that

this Court also compel disclosure of the informant's identity.  Based on the underlying

criminal proceeding, it is readily apparent that the police officers involved in the underlying

incident would be recalcitrant in answering Plaintiffs' inquiries regarding the warrant and

the CI.  In fact, the affiant in the warrant application, Officer DiFante, gave repeated

equivocal answers to Plaintiffs' questions regarding the CI, the warrant application, and the

reliability requirements related to the warrant.  In the underlying Probable Cause hearing,

DiFante repeatedly responded to questions about the warrant and CI by answering

reluctantly, answering that he "believe[d] so", and saying that he could not recall.  See

Docket No. 25, Exhibit "G" pp. 20-21.  When DiFante was asked whether he had done

anything to test the reliability of the information between June 1st when he met the

informant and later that same day when the judge read the warrant application, he stated:

"It's possible that if I told you that, that I would be giving up the informant, so I don't know

how I can answer the question."  Docket No. 25, Exhibit "G" at p. 15.  When Plaintiffs'

defense counsel questioned whether the CI spoke or gave any information to the judge,

DiFante stated under oath: "I do not recall there were a lot of people there.  I know that

individual was there, and I do not know, if at all, any conversations occurred between the

two of them."  Docket No. 25, Exhibit "G" at p. 22.   It is clear from the Defendants'

forgetfulness, equivocation, and elusiveness that Defendants' depositions will not provide

information "**essential to a fair determination of the issues in the case**." See *Roviaro,*

353 U.S. at 60-61 (emphasis added); see also *Cullen v. Margiotta*, 811 F.2d 698 at 715-16

(2d Cir. 1987).

### C. The particular circumstances surrounding the Informant require that disclosure of his communications and identity be compelled.

The identity of the CI is necessary in order for Plaintiffs to orally examine the informant. As stated above, disclosure is most appropriate when the informant is "a key witness or participant" or when the informant is integral to the case. *U.S. v. Saa*, 859 F.2d at 1073. The informant in this case clearly was both a key participant and integral to the case. The informant used by the Defendants was the sole source of information used to support a warrant that led to the search on June 1, 2005 of Plaintiffs' home. See *Carbajal v. Village of Hempstead*, 2003 WL 23138447, at *2. That information allegedly included statements that the Plaintiffs' house was tantamount to a marijuana treasure trove and commercial marijuana retail outlet.

Moreover, the Defendants did nothing to corroborate the informant's information; they performed no controlled buys, did limited surveillance of no consequence, and did no additional investigation. Docket No. 25, Ex. "G". On the *very same day*, each of the following events occurred:

- CI was arrested by Irondequoit Police;

- Irondequoit Police elicited information about a "Brian Angler" from CI;

- CI appeared before Judge Dinolfo;

- Officer DiFante's warrant application was made;

- Warrant was issued; and

- GRANET executed an armed raid on Plaintiffs' home

The Defendants discovered no "Brian Angler" and only trace amounts of marijuana after extensively ransacking the entire house-- the aggregated marijuana amounted to a charge of fifth degree criminal possession of the drug. See Docket No. 25. Therefore, it is of

critical import, as to the issue of whether probable cause existed for the warrant, that the only person with information related to the alleged illegal conduct be deposed; that single person is the CI. As a result, the Plaintiffs must be afforded an opportunity to orally examine the CI to raise a question of fact as to whether probable cause existed to support the warrant and the subsequent search and seizure.

It is clear from Defendants' conduct that it will be impossible to elicit the necessary information from deposing the defendant law enforcement officers themselves. The informant's identity and testimony is of critical importance to the Plaintiffs and to a determination of the claims Plaintiffs have raised in the case at bar. Whether or not the informant's information was reliable, stale, coerced, or patently false is information both relevant and essential to the presentation of Plaintiffs' case on the merits and the CI is the only source from whom to effectively glean such information.

In addition to the above requests, Plaintiffs request access to all information in Defendant's custody pertaining to the activity of the CI on behalf of Defendants for the two years prior to June 1, 2005. This information is necessary to establish the credibility, reliability, and accuracy of the past information provided to Defendants by the CI so that Plaintiffs may examine the reasonableness of Defendants' reliance on the information provided by the CI pertaining to Plaintiffs. This information is essential to a fair determination of the merits of this action. See *Carbajal*, 2003 WL 23138447, at *5; see also *Roviaro*, 353 U.S. at 60-61.

### D. A balancing test in this case requires disclosure of the Informer's information and identity without any prejudice to Defendants.

When considering whether to override the informer's privilege, the law requires a court to balance the public's interest in protecting the flow of information to law

16

enforcement personnel against the public's interest in a fair determination of the merits of a case. See *Roviaro,* 353 U.S. at 60, 64. As detailed in the foregoing paragraphs, the identification of the informer and the production of his communications are essential to a fair determination of the issues in this case, therefore, the informer's privilege cannot be invoked. Moreover, however, invoking the informer's privilege in this case does little to advance the public interest in protecting the free flow of information to law enforcement. The CI in this case was not a concerned, civic-minded citizen. On the contrary, the informant in this case was a criminal, a stool pigeon, under arrest, looking to save himself by offering false information to the Defendants. Offering to provide information in exchange for some guarantee of leniency, the CI proffered the bogus information used to support Defendants' search warrant.

It is respectfully submitted that no serious argument can be made that the CI's identity needs to be protected nor have Defendants made any such credible assertion. Where anonymity may be important in safeguarding the well-being of a CI who is a concerned citizen, or witness in a pending criminal case, or informant in an ongoing investigation, none of those circumstances exist here. In fact, the criminal case is **more than three years old** and there is simply no need for continued secrecy.

Finally, it is crucial that Defendants cannot demonstrate any claim that the CI involved in the June 1, 2005 warrant application continues to conduct "undercover" work for any law enforcement authority. Nor is there any claim that his identity has never been revealed in any other action or that disclosure of his identity would jeopardize any pending investigation or prosecution. The informant "could clearly play a decisive role in resolving the very colorable factual dispute" between Plaintiffs and Defendants. See *People v.*

17

*Goggins*, 34 N.Y.2d 163, 172 (1974).  As a result of the aforesaid, it is clear that the Plaintiffs' need for disclosure outweighs the Defendants' need for secrecy.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court vacate the order of the Magistrate and grant Plaintiffs' motion pursuant to FRCP 37 and grant the relief sought therein.

## PLEASE NOTE: ORAL ARGUMENT IS HEREBY RESPECTFULLY REQUESTED

**DATED:**  October 23, 2009
Rochester, New York

_____
JEFFREY WICKS, PLLC
Attorney for Plaintiffs
36 West Main Street
Suite 101, Executive Building
Rochester, New York 14614
Telephone: (585) 325-6070
E-Mail: wickslaw@rochester.rr.com